VORYS, SATER, SEYMOUR & PEASE LLP
Thomas N. McCormick (Bar No. 325537)
tnmccormick@vorys.com
4675 MacArthur Court, Suite 700
Newport Beach, CA 92660
Telephone: 949-526-7903
Facsimile: 614-719-4693

Victor A. Walton, Jr. (admitted *pro hac vice*)
vawalton@vorys.com
Jeffrey A. Miller (admitted *pro hac vice*)
jamiller@vorys.com
Joseph M. Brunner (admitted *pro hac vice*)
jmbrunner@vorys.com
301 E. Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723- 4616
Facsimile:  (513) 852-7869

Attorneys for Defendants
KROGER SPECIALTY PHARMACY, INC.
KROGER SPECIALTY PHARMACY CA 2, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| United States ex rel. Edwin Gvalevech, | Case No. 2:17-cv-02141 SB (Ex) |
|---|---|
| Plaintiff/Relator, | HON. STANLEY BLUMENFELD, JR. |
| v. | **DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES** |
| Kroger Specialty Pharmacy, Inc. et al., | |
| Defendants. | Date:        June 2, 2023<br>Time:        8:30 a.m.<br>Courtroom:  6C<br>Judge: Hon. Stanley Blumenfeld, Jr. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

I.    PRELIMINARY STATEMENT ................................................. 1

II.   FACTS .......................................................................................... 2

    A.    Relator Did Not Diligently Investigate the Basis for His Case Against KSP ................................................................. 2

    B.    Relator Made an Unsupported Allegation to Save His Claims Against KSP .......................................................... 3

    C.    KSP Disclosed Relevant Information Showing It Was Not Involved .............................................................................. 5

    D.    Relator Continued to Pursue Baseless Claims Against KSP ...................................................................................... 7

III.  LAW AND ARGUMENT .......................................................... 8

    A.    Legal Standard ................................................................... 8

    B.    Relator's Claims Against KSP Were Clearly Frivolous and Vexatious .................................................................... 9

    C.    Relator's Conduct as a Whole Supports a Fee Award to KSP .................................................................................... 12

    D.    KSP Requests Fees from the Filing of the Amended Complaint Until the Granting of Summary Judgment ... 17

IV.   CONCLUSION ......................................................................... 18

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amphastar Pharm. Inc. v. Aventis Pharma S.A.*, No. 5:09-cv-00023-SHK, 2021 WL 1749875 (C.D. Cal. May 3, 2021) .........................................17

*Amphastar Pharm. v. Sa*, No. EDCV-09-0023 MJG, 2017 WL 10543563 (C.D Cal. Nov. 20, 2017) ....................................................12, 13, 16

*Barnes v. Clark Cty.*, No. 21-15137, 2022 WL 73052 (9th Cir. Jan. 7, 2022).............................................................................................................8

*Bedford Cty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, No. 1:14-cv-376, 2021 WL 9033046 (E.D. Tenn. Sep. 30, 2021)....................9

*Carter v. Subway Store*, No. 11-15158, 2012 WL 666838 (E.D. Mich. Feb. 29, 2012)...........................................................................................11

*Christiansburg Garmet Co. v. EEOC*, 434 U.S. 412 (1978) ...............................13

*Franchek v. Workrite Ergonomics, LLC*, No. 16-cv-02789-JSW (DMR), 2022 WL 3137928 (N.D. Cal. May 9, 2022) ...................................18

*In re Nat. Gas Royalties Qui Tam Litig.*, 2011 U.S. Dist. LEXIS 158820, 2011 WL 12854134.................................................................10

*In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010 (10th Cir. 2017)..............................................................................................................10

*Pack v. Hickey*, 776 F. App'x 549 (10th Cir. 2019)............................................9

*Pack v. Hickey*, No. 15-CV-185-F, 2018 WL 11251593 (D. Wyo. Apr. 6, 2018)...........................................................................................................16

*Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999 (9th Cir. 2002)............................9

*Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. CV 19-8612 PSG (JCx), 2021 WL 1895905 (C.D. Cal. Mar. 16, 2021)...........................................................................................................18

*United States ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280

(5th Cir. 2006) ..................................................................14

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12cv275

(DLC), 2014 WL 6750277 (S.D.N.Y. Dec. 1, 2014)......................................12

*United States ex rel. Herbert v. Nat'l Academy of Sciences*, No. 90-

2568, 1992 WL 247587 (D.D.C. Sept. 15, 1992) ...........................................16

*United States ex rel. Ibew Local Union No. 98 v. The Fairfield Co.*,

No. 09-4230, 2020 WL 1821028 (E.D. Pa. Apr. 10, 2020) ..............................1

*United States ex rel. J. Cooper & Assocs. v. Bernard Hodes Group,*

*Inc.*, 422 F. Supp. 2d 225 (D.D.C. 2006) ........................................................11

*United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d. Cir. 2001) ...................9

*United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009)..............9

*United States v. San Bernardino Mts. Cmty. Hosp. Dist.*, No. EDCV

17-2 JGB (KKx), 2020 WL 6150959 (C.D. Cal. Aug. 17, 2020)..................14

**STATUTES**

31 U.S.C. § 3730(d)(4) ..................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..........................................................................2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      PRELIMINARY STATEMENT

On March 24, 2023, the Court granted summary judgment in favor of Kroger Specialty Pharmacy, Inc. ("KSP"), noting that it had provided "**uncontroverted evidence** that KSP had no ownership interest in the Pharmacy" at issue in this case and that Relator had provided "**no contrary evidence** showing that any employee of KSP had any involvement with anything that happened at the Pharmacy." Dkt. No. 161 at 9 (emphasis added). Although Relator had managed to survive a motion to dismiss by alleging in his amended complaint that Brenda Goodman worked for KSP, the Court noted that Relator "does not appear to dispute that Goodman was not employed by KSP, and he produces **no contrary evidence** suggesting that she was." *Id.* (emphasis added).

The claims against KSP were baseless from the start of the case. Had Relator performed even basic searches of secretary of state websites before filing this action, he would have learned that KSP was "not in the same reporting chain or even the same family of 'Modern Health' pharmacies as [its codefendant] KSP CA2." *Id.* (emphasis added). But Relator did nothing to investigate the validity of his claims and simply asserted them with no foundation or basis in fact.

The False Claims Act ("FCA") permits courts to award "reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). The claims against KSP were frivolous from the start, and KSP respectfully requests that the Court grant its fees and expenses.

KSP is not seeking its fees associated with this petition, although there is authority indicating they are recoverable.  *See, e.g., United States ex rel. Ibew Local Union No. 98 v. The Fairfield Co*., No. 09-4230, 2020 WL 1821028, at * 20 (E.D. Pa. Apr. 10, 2020) (awarding "fees incurred in preparing the fee petition").

## II.    FACTS

**A.    Relator Did Not Diligently Investigate the Basis for His Case Against KSP**

In his original complaint, Relator alleged that KSP was formerly Modern HC Holdings, Inc., and that it operated Defendant Kroger Specialty Pharmacy CA 2, LLC ("KSP CA 2"), the Ad-Rx pharmacy. Dkt. No. 1 at ¶¶ 1, 24, 113. He then lumped KSP and KSP CA 2 together, defining them jointly as ModernHealth through his complaint without differentiating between them as if they were one entity. If Relator or his attorneys had checked the Delaware and Florida secretary of state business filings before filing the action, they would have discovered publicly available certificates of incorporation and formation showing that KSP was an Axium Pharmacy company that had never been part of the ModernHealth family, and that KSP had nothing to do with the operations of the Ad-Rx pharmacy at issue in this case. *See* Dkt. No. 109 at 9-10; Dkt. No. 110 at Ex. 3-7 (publicly available Delaware and Florida corporate filings).

KSP moved to dismiss the claims against it on January 7, 2022, noting that Relator "refers to the two separate Kroger entities collectively as ModernHEALTH throughout his complaint, without differentiating between them, and it is often unclear which entity is actually being discussed." Dkt. No. 65 at 2. It noted that Relator treated the companies "as one and the same throughout his Complaint, despite the fact that **they are wholly separate corporate entities with independent legal identities**." *Id.* at 7 (emphasis added). KSP cited cases holding that lumping entities together like this fails to satisfy Rule 9(b). *Id.* That same day, KSP filed a notice of interested parties stating that "**Kroger Specialty Pharmacy CA 2, LLC [wa]s owned by Kroger Specialty Pharmacies Holdings 2, Inc.**," Dkt. No. 66 at 1-2 (emphasis added), not KSP.

**B.      Relator Made an Unsupported Allegation to Save His Claims Against KSP**

Relator then amended his complaint, mooting the motion to dismiss. In his amended complaint, Relator again incorrectly alleged that Ad-Rx was owned by KSP, Dkt. No. 69 at ¶ 147, even though he had been told this was false and the secretary of state websites would have confirmed it. He also added a new (and false) allegation that Brenda Goodman (one of Ad-Rx pharmacy's purported bad actors in his complaint) was employed by KSP. *Id.* at ¶¶ 20, 150-51. The rest of the complaint still lumped KSP and KSP CA 2 together, referring to them jointly hundreds of times. KSP moved to dismiss on this ground (and others), writing:

> Instead of defining all four entities with one word, he now (still imper-
> missibly) lumps Ad-Rx and Modern HC Holdings, Inc. together as
> "ModernHEALTH." And though he now lists KSP and KSP CA2 sep-
> arately, he still groups all four entities together throughout his FAC
> without differentiating between the entities' respective alleged conduct.
> He refers to "ModernHEALTH, KSP, and KSP CA2" as a group 173
> times in the FAC. He groups "KSP and KSP CA2" together 215 times
> without differentiation. Whether defining them collectively or listing
> them as a string-cite, Relator's failure to differentiate these discrete de-
> fendants' individual roles in the alleged fraud requires dismissal under
> Rule 9(b).

Dkt. No. 74 at 6.[1]

---

[1]      KSP noted the "inaccuracy of [the] allegation" that Ad-Rx "somehow came to be subsequently owned by Kroger Specialty Pharmacy, Inc.," Dkt. No. 83 at 3, but allegations are taken to be true for purposes of a motion to dismiss.

In his opposition to this motion to dismiss, Relator argued that despite this repeated lumping together of the entities, his complaint "specifically names and describes the individuals who engaged in the fraudulent conduct while acting as agents on behalf of each entity: the Pharmacist-in-Charge (PIC) of KSP CA 2, the local pharmacy at issue, Ramona Edery and corporate level executive, KSP Vice President of Sales Brenda Goodman." Dkt. No. 81 at 7.

As a result of this false allegation that KSP employed Brenda Goodman, Relator's complaint survived the motion to dismiss. In its order denying the motion, the Court agreed that most of the allegations in the complaint improperly lumped the defendants together and therefore failed to state a claim, but found that the allegations about Goodman working for KSP while managing the pharmacy were enough to get past the motion:

> The FAC's collective allegations, by themselves, are therefore insufficient to state a plausible claim under the FCA. But those allegations are not by themselves. Gvalevech also makes numerous allegations about specific actions by Edery, KSP CA2's Pharmacist in Charge at the Pharmacy, and Goodman, a Senior Vice President at KSP, among others. In this way, notwithstanding its frequent lumping together of the entities, the FAC differentiates between the actions of KSP CA2, which controlled the day-to-day operations of the Pharmacy, and KSP, which provided management and direction. Both KSP CA2's Edery and KSP's Goodman are alleged to have played substantial and distinct roles in the conducting or approving the improper conduct at the Pharmacy and in obstructing and retaliating against Gvalevech's reporting efforts. Moreover, the FAC plausibly alleges facts showing that KSP and KSP CA2 worked together in managing the Pharmacy and both were deeply involved in the alleged fraudulent conduct. Because the FAC contains enough specific allegations to plausibly identify the roles

1    of KSP and KSP CA2 in the conspiracy, it satisfies Gvalevech's plead-

2    ing burden.

3   Dkt. No. 88 at 8.

4        By claiming that Goodman worked for KSP and that KSP had oversight of

5   KSP CA 2, Relator was able to save his claims against KSP. But at the time Relator

6   filed this amended complaint, Relator had **no evidence** to support these allegations

7   and he should have known they were wrong.

8   **C.    KSP Disclosed Relevant Information Showing It Was Not Involved**

9        On March 29, 2022, KSP filed its answer, which denied the allegations con-

10  cerning Goodman's employment and KSP's involvement with Ad-Rx. Dkt. No. 93

11  at ¶¶ 20, 150-51. On July 19, 2022, KSP produced a corporate organizational chart

12  that showed that it did not own KSP CA 2 (indeed, that the pharmacy was not even

13  in its reporting chain), and that it operated three other pharmacies not at issue in this

14  case:



15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dkt. No. 114-2 at 2. On this same date, KSP also produced a packet of corporate filings that showed that KSP was an Axium company, not a ModernHealth company like Ad-Rx. *See* Dkt. No. 110 at ¶ 10. **Again, these corporate filings were publicly available on the Delaware and Florida secretary of state websites before Relator filed this case, but Relator's counsel never checked these sites**. Dkt. No. 169 at 7-10.

In its answer to Relator's interrogatories on September 2, 2022, KSP again explained to Relator that Goodman worked for KSP CA 2, and that KSP had no involvement with Ad-Rx. *See, e.g.*, Dkt. No. 114-5 at 5 ("KSP is owned by Kroger Specialty Pharmacy Holdings, Inc. KSP neither owned nor operated KSP CA 2 and did not assume ownership or control over any of the ModernHealth entities as a result of the acquisition."); *id.* at 6 ("Kroger states that Ramona Edery and Brenda Goodman were employees of KSP CA2" and "Kroger Specialty Pharmacy, Inc, was not in the chain of command for AdRx operations").

During depositions, the witnesses confirmed these facts. *See, e.g.*, Ex. A, Decl. of Victor A. Walton, Jr. ("Walton Decl."), exhibit 1, Deposition of Brenda Goodman, 12/16/2022 ("Goodman Dep."), 33:23-33:25 ("I worked for Ad-Rx only. KSP CA2."); *id.* exhibit 2, Deposition of Thomas Dervin, 01/04/2023, 258:16-258:17, 259:15-259:17 ("KSP, Inc. did not have an ownership stake over Ad-Rx. . . . That pharmacy was Axium through to Kroger and never part of Modern Health pharmacies.").

On December 16, 2022, Relator filed a motion to amend his complaint to add the actual parent company of KSP CA 2 and its corporate parents all the way up to The Kroger Co. Dkt. No. 106. Relator claimed that amendment was necessary because he had only just recently become aware that KSP CA 2 was dissolved and cancelled—a fact that Relator accused KSP of hiding, Dkt. No. 106 at 4, 13, despite the fact KSP produced the cancellation documents in July, the fact that the parties had subsequently noted that KSP CA 2 no longer existed in multiple filings with the

Court, and the fact that the cancellation documents were publicly available on the internet, *see* Dkt. No. 109 at 11-13. In his reply in support of his motion, Relator finally acknowledged that "[t]he entity that owned KSP CA 2 is Kroger Specialty Pharmacy Holdings 2, Inc.," Dkt. No. 114 at 5, not KSP as he had originally alleged. He did not dismiss his claims against KSP, however. Nor did he dismiss his claims against KSP CA 2, despite knowing it had been dissolved.

On January 20, 2023, the Court denied Relator's motion to amend his complaint, noting that "[e]ach termination was publicly available on the respective secretary of state's website, and Gvalevech's counsel was able to find the 'terminated' status on these websites through a simple search when he finally investigated the matter in December 2022." Dkt. No. 140 at 3. The Court also noted that "it is undisputed that on July 19, 2022, Defendants produced to Gvalevech the KSP CA 2 cancellation documents filed in California and Delaware, along with an organizational chart reflecting the relationships among the various Kroger entities. . . . Thus, Gvalevech possessed the information he claims was withheld at the latest by mid-July 2022—five months before he filed his motion." *Id.* The Court added that "Gvalevech's counsel (commendably) acknowledged at the motion hearing that he should have realized that KSP CA 2 was defunct when he received the documents and that his failure to do so was 'inexcusable.'" *Id.* The Court further noted that "Gvalevech's proposed SAC merely adds the three new Kroger Defendants without alleging any facts showing specific acts by those Defendants that subject them to liability," though it found it unnecessary to consider the futility of amendment given the other defects in the motion. *Id.* at 5 n. 3.

**D.     Relator Continued to Pursue Baseless Claims Against KSP**

Even though the uncontroverted evidence showed that KSP had nothing to do with his claims, Relator continued to pursue his claims against the company. KSP moved for summary judgment. Dkt. No. 143, 146.

7

On March 24, 2023, this Court granted summary judgment to KSP, noting that it had provided "**uncontroverted evidence** that KSP had no ownership interest in the Pharmacy and was not in the same reporting chain or even the same family of 'Modern Health' pharmacies as KSP CA2." Dkt. No. 161 at 9 (emphasis added). The Court added that Realtor "identifies **no contrary evidence** showing that any employee of KSP had any involvement with anything that happened at the Pharmacy," and that "he does not appear to dispute that Goodman was not employed by KSP, and he produces **no contrary evidence** suggesting that she was." *Id.* (emphasis added). The Court also found that Relator had not substantively engaged with the fact of KSP CA 2's cancellation, only advancing a waiver argument and an inapposite alter-ego argument that "undisputedly" did not apply to KSP CA 2. *Id.*

In short, Relator never had any support for his allegation that KSP was the parent company of KSP CA 2 (a simple internet search would have told him this was wrong), or that it had any involvement with Ad-Rx. And when faced with the first motion to dismiss, he inserted a baseless allegation that KSP employed Goodman into his amended complaint. As a result, KSP incurred the unnecessary expense of a year of active litigation.

### III.   LAW AND ARGUMENT

#### A.   Legal Standard

The FCA provides that "[i]f the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). The Ninth Circuit "has developed a stringent test for 'clearly frivolous' actions under the FCA: 'An action is "clearly frivolous" when "the result is obvious or the appellant's arguments . . . are wholly without merit."'" *Barnes v. Clark Cty.*, No. 21-15137, 2022 WL 73052, at * 1 (9th Cir. Jan. 7, 2022) (quoting

*Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002)). The test asks whether the relator's claims were objectively frivolous and does not examine the relator's subjective intent. *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 705 (2d. Cir. 2001).

"The award of fees under the False Claims Act is reserved for rare and special circumstances," and a "district court must make detailed findings in support of any award." *Pfingston*, 284 F.3d at 1006-07. This case, however, presents such a special circumstance.

## B.    Relator's Claims Against KSP Were Clearly Frivolous and Vexatious

Again, as the Court noted in dismissing the claims against KSP, Relator presented literally no evidence "that any employee of KSP had any involvement with anything that happened at the Pharmacy," and the evidence to the contrary was "uncontroverted." Dkt. No. 161 at 9 (emphasis added). Courts award fees where relators assert claims like this without an evidentiary basis. *See, e.g.*, *Bedford Cty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, No. 1:14-cv-376, 2021 WL 9033046, at * 3 (E.D. Tenn. Sep. 30, 2021) (fees proper in FCA action where a relator's claims are "groundless or without foundation" or "when a plaintiff has no evidence on which to base the plaintiff's claims"); *Pack v. Hickey*, 776 F. App'x 549, 559 (10th Cir. 2019) (affirming the award of fees where the relator "failed to adduce evidence" to support a number of his allegations); *United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("Since plaintiff's allegations were bereft of any objective factual support, they clearly had no chance of success. Hence, an award of attorneys' fees to defendants was fully justified.").

From the start, the claims against KSP "had no reasonable chance of success." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009) ("Suffice it to say, that, when the evidence in the record is viewed objectively, Relator Vuyyuru's claim that he qualified as a proper relator clearly had no reasonable chance of success. In sum, we hold the district court did not abuse its discretion in

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

deciding to award The Cameron Foundation attorneys' fees and costs under § 3730(d)(4)."). Again, Relator's allegation that Goodman worked for KSP—the sole fact that saved his claims against the company from dismissal at the outset of this case—was complete and unfounded speculation. In *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1024 (10th Cir. 2017), the Tenth Circuit affirmed a fee award when the relator similarly asserted a claim based on complete speculation:

> Without support from the inaccurate Exhibit Bs, his own personal deal-
> ings and investigation of the fraud, or any other supporting evidence,
> Mr. Grynberg's claims against the FCA Appellees lacked an eviden-
> tiary foundation. In the district court's words, the allegations *Grynberg
> I* deemed critical to the claims' success were based on nothing more
> than "complete speculation." *In re Nat. Gas Royalties Qui Tam Litig.*,
> 2011 U.S. Dist. LEXIS 158820, 2011 WL 12854134, at *7 ¶ 26. The
> district court therefore did not abuse its discretion in awarding fees un-
> der § 3730(d)(4) based on the clear frivolousness of Mr. Grynberg's
> claims against the FCA Appellees.

*Id.*

Relator's speculation that KSP was the parent company of KSP CA 2 is even less excusable given that (1) simply checking corporate filings on secretary of state websites would have confirmed it was wrong, and (2) KSP's notice of interested parties disclosed the actual parent company. It was incumbent upon Relator to do some basic investigation into his allegations before he filed this case—as the Court has already recognized. *See* Dkt. No. 140 at 4 ("on this record, the Court cannot conclude that diligent counsel would not have explored the liability of KSP CA2's disclosed parent companies far earlier"); Dkt. No. 169 at 15-16 (Relator's counsel conceding that "[i]t was inexcusable for us not to have noticed" these issues until December 2020).

In *Carter v. Subway Store*, No. 11-15158, 2012 WL 666838 (E.D. Mich. Feb. 29, 2012), the relator alleged that two of the individual defendants worked at a Subway and Jet's Pizza, and he named the Subway and Jet's Pizza stores as co-defendants as a result. The Court found that these defendants were entitled to their fees because the relator had not done a proper investigation concerning their employment prior to initiating the lawsuit:

> The Court believes that an award of attorney's fees is appropriate here. . . . It is clear that Plaintiff filed suit with little investigation into the facts underlying his claims. It seems that his only evidence that Thomas and Jones worked at Subway and Jet's Pizza was based on review of their Facebook profile pages. Plaintiff apparently named Subway Store #6319 as a defendant based on the statement of a friend of Jones that Jones worked at the Subway "downtown . . . beside Jet's."

*Id.* at * 5 (emphasis added); s*ee also United States ex rel. J. Cooper & Assocs. v. Bernard Hodes Group, Inc.*, 422 F. Supp. 2d 225, 239 (D.D.C. 2006) (relator's decision to lodge "claims that fly in the face of the available evidence" supported a finding of frivolous and vexatious conduct and fee award to defendants). This Court has already twice chided Relator for a similar failure to conduct a basic investigation into the corporate facts before filing his case:

- On January 20, 2023, this Court noted that Relator "Gvalevech's counsel conceded at the hearing that he nevertheless did not check the secretary of state's website for either California or Delaware when he filed the FAC or at any time before December 2022," and that the failure "to perform this basic investigation" reflected a "substantial failure of diligence." Dkt. No. 140 at 3.

- In its order granting summary judgment, the Court noted that even though the "Defendants disclosed in their notice of interested parties . . . that KSP CA 2

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

is owned by Kroger Specialty Pharmacy Holdings, 2, Inc.," Relator had none-theless chosen to "to name a distantly related entity that he has not shown had any involvement in running the Pharmacy." Dkt. No. 161 at 12.

The fact that Relator manufactured a fact about KSP in his amended complaint rather than drop the entity from his case further warrants fees here. In *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12cv275 (DLC), 2014 WL 6750277, at * 4-5 (S.D.N.Y. Dec. 1, 2014), the relator similarly sued multiple defendants in a cor-porate family of pharmacies, including MHA LTC. The defendants presented mate-rials to the relator showing the structure of the corporate family, and that MHA LTC had no oversight concerning the submission of claims by pharmacies in its corporate family. *Id.* at * 3. "Instead of dropping MHA from this action following the . . . meeting, Fox concocted a theory of liability against MHA LTC based wholly on an obvious misreading" of a provider agreement, suggesting without any "reasonable basis . . . that MHA LTC had undertaken the responsibility of supervising its Net-work Pharmacies' compliance with all applicable laws." *Id.* at * 4. The court held that these claims were clearly frivolous and ordered that the "motion for fees and costs since January 10, 2014 is granted in an amount to be determined following the submission of supporting documentation by MHA LTC." *Id.* at * 5. Relator did the same thing here—concocting a false allegation that Goodman worked for KSP solely to prevent it from prevailing on its motion to dismiss.

**C.    Relator's Conduct as a Whole Supports a Fee Award to KSP**

Relator's other conduct during this litigation may be considered in determin-ing whether fees are appropriate. In *Amphastar Pharm. v. Sa*, No. EDCV-09-0023 MJG, 2017 WL 10543563 (C.D Cal. Nov. 20, 2017), the Ninth Circuit remanded the FCA case to the district court to assess whether it was appropriate to award fees to the prevailing defendant. The court noted from the outset that "Amphastar had no reasonable foundation on which to bring the suit[,]" and that it "knew or should have known that the Court would not have jurisdiction." *Id.* at * 8. The court concluded

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

that "[d]eciding to pursue a lawsuit without a credible foundation from the onset for doing so is clearly frivolous." *Id*. The court further noted that it had previously considered sanctioning the relator or his counsel or their conduct during the litigation, and that this conduct helped tip the scales toward an award of fees:

> Although the Court declined to impose sanctions against either Amphastar or its counsel related to the conduct during the course of the evidentiary hearing, the Court did find that counsel had acted improperly. The Court determined that there was not clear and convincing evidence of intentional bad faith by Amphastar's counsel. *See* Decision Re: Conduct of Counsel, ECF No. 535. However, the FCA attorneys' fees provision does not require a finding of subjective bad faith. *See, e.g.*, *Christiansburg* [*Garmet Co. v. EEOC*], 434 U.S. [412,] 421 [(1978)] ("[T]he term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award . . . .").
>
> Upon reviewing the entire course of the litigation, the Court notes multiple discovery issues, improper conduct, incredible testimony, and a baseless claim with no supporting evidence. As a result, both Aventis and the Court have devoted countless hours and resources to bring this litigation to resolution. These findings lend weight to an award of attorneys' fees, even though an award is not mandatory upon a finding of frivolousness.
>
> Accordingly, the Court shall exercise its discretion and award Aventis its reasonable fees from the time of the unsealing of the Complaint to the final disposition.

*Id*. at * 8-9.

Like the relator in *Amphastar*, Relator's claims against KSP had no "credible foundation."  And like the Relator in *Amphastar*, Relator here has engaged in other sanctionable conduct—such as lodging late documents after argument without Court

permission and violating nearly every rule in the Court's summary judgment order. *See* Dkt. No. 140 at 5 n. 3 (noting that "at the motion hearing, Gvalevech's counsel raised additional evidence not referenced in the proposed SAC (which he subsequently lodged without leave of Court, Dkt. No. 135)"); Dkt. No. 161 at 3-5 (itemizing Relator's various violations of the Court's summary judgment order and that they were sanctionable, but declining to award sanctions); Walton Decl., exhibit 4, 03/24/2023 Hr'g Tr., 5:25-7:18 (cataloging ways Relator's counsel ran roughshod over summary judgment requirements and explaining that the Court was not imposing sanctions only because it could rule on other grounds); *e.g. United States ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283-84 (5th Cir. 2006) (failure to comply with procedural filing requirement supported fee award to prevailing defendant).

Moreover, the statute recognizes that fees may be awarded where an action is "clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff 'pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant.'" *United States v. San Bernardino Mts. Cmty. Hosp. Dist.*, No. EDCV 17-2 JGB (KKx), 2020 WL 6150959, at * 2 (C.D. Cal. Aug. 17, 2020). There is evidence that Relator brought his action for harassment purposes here. Relator cornered Goodman in the hallway during a break in her deposition, telling her that she would "look good in orange," implying that he was using this litigation because he wanted to send her to prison. Relator's counsel attempted to prevent Goodman from testifying about this threat at the end of the deposition:

| | |
|---|---|
| Mr. Cohen: | It's my deposition. It's my deposition. The deposition is now terminated until further notice. |
| Ms. Goodman: | I'm the witness, and I can talk, right? |
| Mr. Cohen: | It is my turn. You are not allowed to impose on my time. |

| | | |
|---|---|---|
| 1 | Ms. Goodman: | I'm not allowed to talk? I'm the witness, right? |
| 2 | Mr. Cohen: | You're only allowed to answer questions, ma'am. |
| 3 | Mr. Miller: | That isn't true. The witness has a thing to say. |
| 4 | Mr. Walton: | The court reporter wants to go. |
| 5 | Mr. Cohen: | We're going to conclude the deposition now. He's |
| 6 | | not going to – I need you to conclude the record |
| 7 | | now. The deposition is now over. I'm terminating |
| 8 | | the deposition. I am terminating the deposition now. |
| 9 | | I am terminating the deposition now. I am terminat- |
| 10 | | ing the deposition now. |
| 11 | Mr. Miller: | Did Mr. Gvalevech threaten you at this deposition? |
| 12 | Mr. Cohen: | This is highly unprofessional. |
| 13 | Mr. Miller: | Did he approach you? |
| 14 | Ms. Goodman: | Yes. |
| 15 | Mr. Miller: | Did he do so to deter your testimony? |
| 16 | Ms. Goodman: | One hundred percent. He decided I would look good |
| 17 | | in orange, because of what I've done. He's a very |
| 18 | | angry man, and he doesn't like what's going on. He |
| 19 | | decided to make me scared and petrified and morti- |
| 20 | | fied. |
| 21 | Mr. Miller: | Did he corner you when you were not in the pres- |
| 22 | | ence of others? |
| 23 | Ms. Goodman: | Yes, in the hallway. |
| 24 | Mr. Miller: | Did he do so with what appeared to be an intent to |
| 25 | | intimidate you? |
| 26 | Mr. Cohen: | Objection. |
| 27 | Ms. Goodman: | And angry. Angry. Angry. |
| 28 | | |

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

| | | |
|---|---|---|
| 1 | Mr. Cohen: | Excuse me, ma'am. I'm allowed to make objec- |
| 2 | | tions, since your counsel is refusing the proper pro- |
| 3 | | tocol of the deposition. I object to that entire session |
| 4 | | of Mr. Miller's attempts. I would – I'm very disap- |
| 5 | | pointed if this is how we have to end, on an unpro- |
| 6 | | fessional manner. |
| 7 | Ms. Goodman: | It was very intimidating and very scary and very un- |
| 8 | | professional, you are right. |
| 9 | Mr. Cohen: | Ma'am, you're here to answer questions. |
| 10 | Ms. Goodman: | I am here to tell you that he intimidated me. He |
| 11 | | made me look like I was going to be in jail. |

Goodman Dep. at 253:21-256:3. Relator later admitted that he had told Goodman that she would look good in orange during a break in the deposition. Walton Decl., exhibit 3, Deposition of Edwin Gvalevech, 12/29/2022, 263:19-263:22 ("Q. Did you tell her that she would look good in orange? A. After a series of spats between us two I did.  Regrettably so."). This is sanctionable behavior. *E.g. United States ex rel. Herbert v. Nat'l Academy of Sciences*, No. 90-2568, 1992 WL 247587, at * 8-9 (D.D.C. Sept. 15, 1992) (awarding sanctions due to pattern of abusive conduct and finding that "the Plaintiff has done little more than dress up his personal grievance against [the defendant] as a *qui tam* claim vindicating the interests of the U.S. government").

As the court noted in *Amphastar*, the Court may consider all of this conduct in exercising its discretion to award fees here. *See also Pack v. Hickey*, No. 15-CV-185-F, 2018 WL 11251593, at * 3, 6 (D. Wyo. Apr. 6, 2018) (noting that a court should "review the entire course of litigation in determining whether attorney fees may be awarded" and awarding fees to the prevailing defendant in the FCA case). KSP submits that, taken together, Relator's conduct shows that his allegations

against KSP were clearly frivolous and vexatious within the meaning of § 3730(d)(4).

**D.    KSP Requests Fees from the Filing of the Amended Complaint Until the Granting of Summary Judgment**

Typically in FCA cases, if a defendant moves for its fees, the court first determines whether fees should be awarded, and then if it awards fees, sets a schedule for determining the amount of fees to be awarded.  After ordering that fees be paid, the *Amphastar* court referred the case "to a magistrate Judge to conduct such proceedings as may be necessary to provide a report and recommendation [("R&R")] regarding the amount of the award to be made."  *Amphastar Pharm. Inc. v. Aventis Pharma S.A.*, No. 5:09-cv-00023-SHK, 2021 WL 1749875, at * 1 (C.D. Cal. May 3, 2021). The magistrate found that the defendant was entitled to $12,132,526.34 in attorneys' fees and $672,086.85 for non-fee expenses, plus interest. *Id*. at * 2. After considering the recommendation, the trial court ordered the relator to pay the defendants "$17,203,703 for fees, expenses, and interest for work performed in this case from October 28, 2011, when the Complaint was unsealed, through November 13, 2020." *Id*. at * 8.

KSP here believes that it is entitled to all of its fees since the unsealing of the case, just like defendants in *Amphastar*. But it is limiting its request to the fees incurred after Relator filed his amended complaint because that is when Relator inserted the allegation that Goodman worked for KSP without any factual basis. Between January 28, 2022 (the date of the First Amended Complaint ("FAC")) and March 26, 2023 (the date of summary judgment), KSP incurred a little under $2 million in fees and just over $400,000 in expenses. Walton Decl. ¶ 7.[2] Such fees and

---

[2]    Vorys had reduced its normal rates for KSP on this matter. Walton Dec. ¶ 8. Partner time on this case was billed at $450 to $575 an hour. Associate time was

expenses are more than reasonable, and are significantly less than the fees and expenses Relator himself has claimed to have incurred in this litigation. Relator's counsel, Louis Cohen, represented that his client had incurred $5 million in attorney's fees and costs associated with this litigation as of December 8, 2022. *Id.* ¶ 9. That was before a single deposition, the retention of experts, the briefing of summary judgment, Relator's motion to amend, the parties' mediation, and the additional hiring of The Rabon Law Firm to assist with his prosecution of this case.

If fees are awarded, KSP will scrutinize its time entries to make further reductions if deemed warranted and submit a detailed explanation of the reimbursement sought.

## IV.   CONCLUSION

For the foregoing reasons, Defendant KSP respectfully requests that the Court order Relator to pay its fees and expenses in this litigation since the filing of the FAC

---

billed at $250 to $350 an hour. Paralegal/IT time was billed at $135 to $235 an hour. *Id.* These rates are significantly lower than rates that have been deemed reasonable for FCA litigation in this district. *See, e.g., Franchek v. Workrite Ergonomics, LLC*, No. 16-cv-02789-JSW (DMR), 2022 WL 3137928, at * 6 (N.D. Cal. May 9, 2022) ("The court finds that the hourly rates of $919 for Scott and $850 for Remick are reasonable and fall within the market rates for attorneys of similar experience, skill, and reputation who handle false claims cases in the Bay Area."); *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. CV 19-8612 PSG (JCx), 2021 WL 1895905, at * 5 (C.D. Cal. Mar. 16, 2021) (noting that "[t]he 2020 Real Rate Report provides that, in Los Angeles, lawyers working in commercial litigation at firms of more than 1,000 lawyers earn the following rates: between $941 and $1,235 for partners; and between $565 and $895 for associates," and finding rates within these parameters reasonable).

DEFENDANT KROGER SPECIALTY PHARMACY, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES

on January 28, 2022, and that the Court set a schedule for the filing of a fee petition to determine the amount to be paid.

Dated: May 4, 2023               VORYS, SATER, SEYMOUR & PEASE LLP

                                 By: */s/ Thomas N. McCormick*


                                 Attorneys for Defendants
                                 KROGER SPECIALITY PHARMACY, INC.
                                 KROGER SPECIALTY PHARMACY CA 2, LLC


## Local Rule 7-3 Certification

I certify that the parties met by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to re-solve the motion in whole or in part.

                                 */s/ Thomas N. McCormick*
                                 Thomas N. McCormick